## Case No. 5,396.

### GIBSON v. HARRIS.

[1 Blatchf. 167; [1] 1 Fish. Pat. Rep. 115.]

Circuit Court, N. D. New York. Oct. Term, 1846.

PATENTS—EFFECT OF EXTENSION—"ORIGINAL PATENT"—REISSUE—PROVISIONAL INJUNCTION.

1. After an extension of a patent under the 18th section of the patent act of July 4, 1836 (5 Stat. 124), the original patent becomes virtually a patent for the term of 21 years.

2. On a surrender and re-issue of the patent, under the 13th section of the same act, after such extension, "the residue of the period then unexpired for which the original patent was granted," specified in that section, is the residue of the 21 years. The patent for 21 years is, in such case, to be regarded as "the original patent" within the meaning of that section.

3. The patent to William Woodworth, for a planing machine, granted December 27, 1828, when extended by the act of congress of February 26, 1845 [6 Stat. 936], became a patent for the period of 28 years from its original date, and a surrender and re-issue of it after such extension stand on the same footing as if they were made in the case of a patent for 21 years.

[Cited in Hussey v. Bradley, Case No. 6,946.]

4. Where, in such case, the re-issued patent was granted "for the term of 28 years from the 27th day of December, 1828," held, that it was not invalid, but was in legal effect a patent for the residue only of the 28 years unexpired at the time of the re-issue.

5. Where the defendant substituted, in Woodworth's planing machine, two smooth plates of iron, operated upon by a screw and a spring, instead of Woodworth's pressure rollers, to keep the board to its bed, held, that this was not a substantial departure from the contrivance of Woodworth, and that a provisional injunction must issue to restrain the use of the machine.

[Applied in Gibson v. Van Dresar, Case No. 5,402.]

In equity. Letters patent of the United States were granted, on the 27th of December, 1828, to William Woodworth, for 14 years from that day, for "a new and useful improvement in the method of planing, tonguing and grooving, &c., plank, boards, &c." On the 16th of November, 1842, under the 18th section of the patent act of July 4, 1836 (5 Stat. 124), the patent was, on the application of William W. Woodworth, administrator of the patentee, extended for seven years from the 27th of December, 1842. By an act of congress, passed February 26, 1845, the patent was further extended for seven years from and after the 27th of December, 1849, and the act directed the commissioner of patents to make a certificate of such extension in the name of the said administrator, and to append an authenticated copy thereof to the original letters patent, whenever the same should be requested by the said administrator or his assigns. On the 8th of July, 1845, the original patent was, under the 13th section of the said act of July 4, 1836, surrendered

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

and cancelled, on account of a defective specification, and a new patent, with an amended specification, was issued "to the said William W. Woodworth, in trust for the heirs at law of the said W. Woodworth, their heirs, administrators or assigns, for the term of twenty-eight years from the 27th day of December, 1828." The plaintiff [John Gibson], an assignee under the re-issued patent, for the county of Herkimer, in the state of New-York, for the term ending December 27, 1849, moved for an injunction to restrain the defendant [Albert G. Harris] from using, in that county, a planing machine, of which a sufficient description is given in the opinion of the court. The specification of Woodworth's patent is set forth at length in Wilson v. Rousseau, 4 How. [45 U. S.] 664–668.

William H. Seward and Ira Harris, for plaintiff.

Arphaxed Loomis, for defendant.

NELSON, Circuit Justice. 1. An objection has been taken on this motion to the validity of the new patent, issued on the 8th of July, 1845, on the surrender of the original one, on the ground that the commissioner of patents had no authority to issue it for the term of 28 years. The extension of a patent in pursuance of the 18th section of the act of July 4, 1836, is made by endorsing a certificate thereon to that effect; and the act of February 26, 1845, granting the last extension, has directed substantially the same thing to be done. The 18th section provides that after the endorsement of the certificate on the original patent, "the said patent shall have the same effect in law, as though it had been originally granted for the term of twenty-one years." The act of congress providing for the additional extension of seven years in this case, is not so explicit in its language, but the legal operation and effect of the grant come to the same thing.

The 13th section of the act of July 4, 1836, providing for the surrender of a patent and its re-issue with an amended specification, authorizes the commissioner to issue the new patent "for the residue of the period then unexpired for which the original patent was granted." The construction of this part of the 13th section was involved in the tenth question certified to the supreme court of the United States in the case of Wilson v. Rousseau, 4 How. [45 U. S.] 646. It was there contended, upon the peculiar phraseology of the section, that the power of the commissioner of patents to receive a surrender and issue a new patent, was limited to the term of the original patent, the 14 years, and that the surrender and reissue after the expiration of the original patent, were acts wholly unauthorized and void. But the court held otherwise. After an extension under the 18th section, the original patent becomes, as has been shown, virtually a patent for the term of 21 years, and then, on a surrender and re-

issue, the residue of the period unexpired of the original patent is the residue of this term. The patent for 21 years is, in such case, to be regarded as "the original patent," within the meaning of the 13th section.

Now, if the extension by the act of congress of February 26, 1845, is as effectual and operative as the one granted under the 18th section of the act of 1836 (and it is difficult to see why it should not be), then the patent, when so extended, became a patent for the period of 28 years, instead of 21 years; and a surrender and re-issue after such extension, stand on the same footing as if they were made in the case of a patent for 21 years. There can be no difference in principle or good sense. The patent, in this case, has been issued in form, for the whole term of 28 years, but as it dates and takes effect from the 27th of December, 1828 (the time of the granting of the original patent for the 14 years), it is, in legal effect, a patent for the residue only of the period unexpired at the time it was issued.

2. Another ground set up against the motion for an injunction, is, that the planing machine of the defendant is substantially different in its construction and mode of operation, and in its combinations, from the machine of Woodworth. Woodworth, as is alleged, uses friction rollers for the double purpose of moving the board against the rotary cutting wheel, so as to be acted upon by the knives or planes, and of pressing it down upon the carriage, so as to keep it close and prevent its being drawn from its bed by the action of the cutters in cutting upwards from the planed surface; whereas the defendant has dispensed with the rollers, and has so constructed his machine that the board or plank is pressed down and retained in its place by means of a screw and a spring, operating upon two smooth plates of iron, one on each side of the rotating planes, by which the board is pressed down upon the moving platform or carriage which carries it forward to the knives. This is the only difference, everything else in the construction of the machine being Woodworth's combination. These smooth iron plates, operated upon by the screw and spring, are substituted in the place of Woodworth's rollers, to keep the board to its bed against the upward tendency given to it by the action of the cutters.

Now, in the first place, Woodworth does not confine his contrivance for moving the board up to the rotary cutters, so that they may act upon it, to the operation of the friction or feeding rollers. The plank, he says, may be moved forward by other means, as by a rack and pinion, by an endless chain or band, by geared friction rollers, or by any of the devices well known to machinists for advancing a carriage or materials to be acted upon, in machines for various purposes; and when the friction rollers are used to move the plank and feed the cutters, the upper one will also operate to keep the plank to its bed, and

may be borne against it by the contrivance of weights or springs, in a manner well known to machinists. The roller may also be used simply as a pressure roller, when the carriage upon which the plank rests is moved by other means, such as a rack and pinion, or an endless chain.

In the second place, Woodworth does not limit his contrivance, to prevent the board from being drawn up by the cutters, to the pressure rollers, but refers to any other device which mechanical skill and ingenuity may readily suggest. The pressure upon the plank, to secure the free action of the rotating planes, is essential to the working of the machine; but as to the particular mode or best mode of accomplishing the end, it is left open to mechanical knowledge. An inventor is not necessarily a machinist. He is often wholly dependent on the skill of this department of knowledge to give embodiment and practical operation to his discovery.

Besides, we are unable to see any substantial difference between the device of the defendant, and the pressure rollers, when used simply to keep the plank in its bed. Change of form will not do, unless a new and useful result is produced. Using a smooth plate instead of a roller, in the same way, for the same purpose, and with a like result, can hardly be regarded as a substantial departure from the contrivance of Woodworth. In the one case the board slides under the plate to the cutters; in the other, under the roller. In the one, the plate is immovable; in the other, the roller turns upon its axis by the moving of the plank, thereby creating less friction, and, for that reason, having probably an advantage over the plate. The object of both is to keep the board or plank in its bed. A flat surface is made to press upon it for this purpose in the one case; a round one in the other. We cannot think that inventors are to be stripped of their property, the fruit, oftentimes, of great toil, ingenuity and expense, by such slight and unimportant alterations of a machine—alterations which the description of the invention would, of itself, naturally, if not necessarily, suggest, without the aid of much ingenuity or skill. An injunction must therefore be issued.

[For other cases involving this patent, see note to Bicknell v. Todd, Case No. 1,389.]